UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JEFFREY ORR, et al.,                              )
                                                  )
                Plaintiffs,                       )
                                                  )
v.                                                )          Case No.: 08-2232- MPM-DGB
                                                  )
WILLARD O. ELYEA, et al.,                         )
                                                  )
                Defendants.                       )

## DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A CLASS DETERMINATION

Defendants Elyea and Puisis, by and through their attorneys, Hinshaw & Culbertson LLP, and Quinn, Johnston, Henderson & Pretoirus, Special Assistant Attorneys General, respectively, for their Joint Response in Opposition to Plaintiffs' Amended Motion For A Class Determination, state as follows:

## INTRODUCTION

Before the Court is Plaintiffs' Amended Motion for Class Determination (Doc. #47) and Memorandum of Law in Support thereof (Doc. #48), both filed on April 5, 2009.  Plaintiffs' motion should be denied because the action for damages is barred by the Eleventh Amendment as it is challenging State policy and not individual conduct.  Additionally, plaintiffs have not satisfied Rule 23 because individual – and not common – issues predominate in the case, and a class action would not be a superior means of resolving the alleged Eighth Amendment claim regarding treatment for Hepatitis C Virus ("HCV") with the Illinois Department of Corrections ("IDOC").  An identical putative class to the one proposed herein was denied by this Court in the related case of *Roe v. Sims*, U.S.D.C. CD-IL, No. 06-3034.

# I.  BACKGROUND

## A.    ALLEGATIONS IN THE COMPLAINT

The plaintiffs (now 165 in number) filed their complaint on September 29, 2008 (Doc. #1) under 42 U.S.C. §1983.  Plaintiffs allege that they are all inmates or former inmates of the IDOC and that their civil rights were violated because the defendants were deliberately indifferent to their serious medical needs in that they did not receive needed medical treatment for HCV.  Plaintiffs have all been diagnosed through blood work as carrying HCV.  (Complaint, ¶2).  Willard Elyea, M.D., is the former Agency Medical Director of IDOC, and defendant, Michael Puisis, succeeded Dr. Elyea as Agency Medical Director.[1]  Elyea, as the Agency Medical Director, had primary responsibility for determining procedures within IDOC for medical treatment of State inmates.  (Complaint, ¶3).

Elyea, in his professional capacity,[2] was informed of plaintiffs' complaints and grievances but took no action on them and personally adopted the policy which denied medical treatment to plaintiffs.  *Id.*  Dr. Puisis personally adopted and continued the policy promulgated by Elyea in refusing to give medical care to inmates with HCV. (Complaint, ¶4). Wexford Corporation, a contractual medical provider with IDOC, through its employees and agents, conspired with and aided and abetted the defendants in implementing the HCV policy and denied plaintiffs their constitutional rights. (Complaint, ¶5). Plaintiffs have exhausted their administrative remedies; defendants have allegedly adopted a policy that all grievances in this

---

[1]    Dr. Puisis has since resigned his position as agency medical director and no longer works for IDOC.

[2]    Plaintiffs do not specify in what capacity they are suing Dr. Elyea.  It appears that he is being sued in his official capacity by use of terms like "professional capacity."  This response, however, assumes that Elyea is also being sued individually.  LIkewise, defendants assume that Dr. Puisis is <u>only</u> being sued in his official capacity.  To the extent he is being sued individually, it is defendants' intention to have all individual capacity arguments apply to Puisis as well.

60186401v1  899622  43744

matter are to be denied without consideration, making futile further administrative efforts to exhaust.  (Complaint, ¶6).

HCV is a potentially fatal disease which, if left untreated, may cause cirrhosis, destruction of the liver, and may lead to liver cancer and also causes other symptoms, thus posing a substantial risk of serious harm to plaintiffs.  (Complaint, ¶7).  Defendants know that HCV poses a substantial risk of serious harm to plaintiffs.  (Complaint, ¶8).  A highly effective chemical treatment program for HCV is available which has been shown to reduce the effects of HCV and, in some cases, destroy it completely.  (Complaint, ¶9).  Before initiating the chemical treatment, however, the usual clinical step is to refer the patient to a specialist to determine a genotype of the virus, determine viral level, and perform a liver biopsy on a patient to determine whether a patient is a good candidate for chemical treatment.  (Complaint, ¶10).  None of the plaintiffs have received proper medical care for the HCV, and IDOC, through defendants, claims to follow the federal guidelines for treatment of HCV and follow the provision for pretrial detainees.  (Complaint, ¶12).  Plaintiffs were  told that after a diagnosis for HCV based on blood work, they must wait one (1) year before receiving a liver biopsy and beginning treatment.  This requirement appears nowhere within the federal guidelines that IDOC claims to follow. (Complaint, ¶13).

Treatment for HCV is  more effective when it is begun early in the course of the disease, but if treatment is postponed, adverse effects of the disease and the necessity of a liver transplant become much more likely.  (Complaint, ¶14).  Liver transplants are  painful, difficult to obtain and result in a lower recovery rate than the chemical treatment available for the early stages of HCV. *Id.* Defendants  refused to administer the HCV chemical treatment to plaintiffs, and their refusing to treat plaintiffs for HCV constitutes deliberate indifference to the substantial risk of

60186401v1 899622 43744

serious harm faced by the plaintiffs and is willful and intentional, causing plaintiffs irreparable harm, pain and suffering.  (Complaint, ¶¶16-19).

### B.   PROPOSED CLASS

The plaintiffs propose herein an identical class here to the *Roe* proposed class:

> The class can easily be described as those inmates within the Department of Corrections who at some point in time during their incarceration had Hepatitis C and elevated liver enzyme levels but received no treatment for that Hepatitis.  The class can be further broken down into sub-groups including:  (a) former residents who have now been released but did not receive treatment while incarcerated; (b) those residents with a genotype susceptible to treatment within 12 weeks and who have more than 12 weeks to stay; (c) those residents with genotypes requiring 48 week treatment with more than 48 weeks remaining on their sentence but who are not receiving treatment; and (d) those with a genotype indicating a 48 week treatment who have less than 48 weeks remaining on their period of incarceration.  (The plaintiffs have intentionally omitted persons of either genotype who have been diagnosed within 12 weeks of their release date, but that group could also be included a smaller sub-group of the class.)  It is possible that a separate resolution or order could be entered as to each of the different sub-classes.

(*Roe*, Doc. #11, ¶10 and *Orr*, Doc. #47, ¶9).

### C.   RELATED CASE:  *ROE V. SIMS*, 06-3034

As this Court is no doubt well aware, the instant case is related to a previous case filed by Plaintiffs' attorney here in the Central District of Illinois – *Roe, et al. v. Sims*, USDC CD-IL 06-3034 (Honorable Harold A. Baker).   *Roe* involved substantially similar, if not identical, claims by four plaintiffs regarding to IDOC's policy for the treatment of HCV.

*Roe* was tried to a jury on February 14 and 15, 2008.  Following a jury verdict in favor of all four plaintiffs ($20,000 compensatory damages and punitive damages of $2 million each) against Dr. Elyea personally, the Court granted, in part, defendants' Motion for Judgment as matter of law.  (*See* Doc. #88).  Judgment as a matter of law was granted in favor of Dr. Elyea and against plaintiffs Walker, Stephen and Stasiak.  Dr. Elyea's Motion as to plaintiff Roe,

60186401v1 899622 43744

however, was denied as to the compensatory damages award but granted as to the punitive damages award wherein a remittur was ordered reducing Mr. Roe's punitive damages award to $20,000.  *Id.*

In denying the *Roe* putative class (identical to the one proposed here), the Court observed as follows:

> As the Guidelines demonstrate, determining the appropriate treatment for an inmate with Hepatitis C is not easily described or determined. It seems to the court on the current record that inmates' experiences with Hepatitis vary widely. Elevated liver enzymes are only one factor in the determination of whether a liver biopsy should be performed, and many different factors affect whether drug therapy should be initiated.  History and physicals, as well as other clinical and lab tests are important, along with determining the existence of contraindications. Here, the court cannot even tell plaintiffs were viable candidates for the drug therapy treatment, be it 12, 24, or 48 week[s].

> In sum, the record does not support Plaintiffs' assertion that "the position of the Defendant is identical to each and every Plaintiff . . .," (d/e 11, p.5)., or that the questions of law and fact share enough commonality and typicality for class certification, at least on the present record. Nor have plaintiffs demonstrated that they adequately represent the class of inmates aggrieved by Dr. Elyea's policy. Plaintiffs do not even offer their own expert testimony about what their condition is or what care they should have received in prison. Accordingly, the Court is not persuaded that class certification is appropriate. (*Roe*, Doc. #27).

## III.  APPLICABLE LAW

**A.**    **RULE 23 - CLASS ACTIONS**

Rule 23 provides the prerequisites for maintenance of a class action, specifically:

> **(a)**    **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> **(1)**    the class is so numerous that joinder of all members is impracticable;
>
>> **(2)**    there are questions of law or fact, common to the class;

5

**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

**(4)** the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

**(b)** **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

* * *

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

> **(A)** the class members' interest in individually controlling the prosecution or defense of separate actions;

> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forms; and

> **(D)** the likely difficulty in managing a class action.

Fed. R. Civ. P. 23(a) and (b).

The plaintiffs herein seek to certify class under Rule 23(b)(2) and 23(b)(3).

**B.    ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY**

The Eleventh Amendment to the U.S. Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

6

The Eleventh Amendment is "a sovereign immunity from suit, rather than a non-waivable limit on the Federal Judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028, 2033 (1997). "When suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake. This common sense observation of the State's real interest when its officers are named as individuals has not escaped notice or comment from this Court, either before or after *Young*." *Id*., 521 U.S. at 269, 117 S. Ct. at 2034.

"The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900 (1984) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S. Ct. 347, 350 (1945)). "A suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id*. at 101-102, 104 S. Ct. at 908-909. "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Id.*, at 101, 104 S. Ct. at 908, n. 11.

A State agency is the State for Eleventh Amendment purposes. *Pennhurst*, 465 U.S. at 100, 104 S. Ct. at 907. Eleventh Amendment immunity encompasses both immunity from liability and immunity from suit. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147, 113 S. Ct. 684 (1993). ". . . [S]overign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine,* 527 U.S. 706, 713, 119 S. Ct. 2240 (1999). The Eleventh Amendment reflects, "the fundamental principle of

7

sovereign immunity [that] limits the . . . grant of judicial authority under Art. III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64, 116 S. Ct. 114, 1127-1128 (1996) (quoting *Pennhurst*, 465 U.S. at 97-98, 104 S. Ct. at 906) (other citations omitted).  "The very object and purpose of the Eleventh Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.  *Puerto Rico Aqueduct*, 506 U.S. at 146, 113 S. Ct. at 689 (citing *In re Ayers*, 123 U.S. 443, 505, 8 S. Ct. 164, 183 (1887).

The touchtone of what constitutes an official capacity suit is that a plaintiff must establish the government entities' policy or custom played a part in the violation of federal law.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

C.      ELEMENTS OF COLLATERAL ESTOPPEL

The doctrine of collateral estoppel or issue preclusion generally bars relitigation of issues that were fully litigated and decided by a court with proper jurisdiction with finality in a previous proceeding.  *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1020 (7th Cir. 2006).  For issue preclusion to apply, four elements must be met:  (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is involved was represented in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). For purposes of collateral estoppel, a decision is final if it is immune to reversal or amendment and disposes of the parties' rights as to the issues of the litigation (*U.S. v. Sherman*, 912 F.2d 907, 910 (7th Cir. 1990); *Gilbert v. Braniff Intern. Corp.*, 579 F.2d 411, 412 (7th Cir. 1978)).

The district court is entrusted with a broad range of discretion in assessing the propriety of the plaintiff's motion that seeks to use collateral estoppel offensively to preclude a defendant

8

from relitigating an issue previously decided in another action. *Garza v. Henderson*, 779 F.2d

390, 393 (7th Cir. 2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S. Ct. 645,

651 (1979)).

## IV.  ARGUMENT

A.  **THE ELEVENTH AMENDMENT BARS ANY CLAIM FOR DAMAGES AGAINST DRS. ELYEA AND PUISIS BECAUSE, IN REALITY, IT IS ONE AGAINST THE STATE OF ILLINOIS. THEREFORE, THE COURT LACKS JURISDICTION TO ALLOW THE CLAIM TO PROCEED**

1.  ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY MUST BE ADDRESSED AS A THRESHOLD MATTER

To the extent Plaintiffs are seeking damages – and it appears they are seeking a

substantial amount – against Dr. Elyea, such claims are barred by the Eleventh Amendment as

well as traditional principles of sovereign immunity. Because Eleventh Amendment and

sovereign immunity entitle the defendants to immunity from liability <u>and</u> suit, it must be

addressed prior to any class action determination and, therefore, is properly raised by defendants

in this Motion.[3]

Defendants urge this Court to examine its previous rationale in the Order Granting and

Denying Post-Trial Motion (*Roe*, Doc, #88, p.2).  Defendants respectfully submit that the

rationale used by the Court in *Roe* to deny defendants' Eleventh Amendment argument creates an

unprecedented expansion of the law, not only in this Circuit but across the Nation.  Holding a

state employee personally liable for his part in drafting an official state inmate health care policy

– when he did not personally treat any of the plaintiffs – is not consistent with federal

jurisprudence on sovereign immunity and the Eleventh Amendment.  This critical issue should

---

[3]      Claims of Eleventh Amendment and sovereign immunity are immediately appealable under the collateral order doctrine.  *Puerto Rico Aqueduct*, 506 U.S. at 145-147, 113 S. Ct. at 687-689.

60186401v1  899622  43744

be resolved before any other issues in the case because successful invocation of these principles

entitle the defendants to immunity from suit.

      2.      THE STATE OF ILLINOIS IS THE REAL PARTY IN INTEREST AND NOT DR. ELYEA INDIVIDUALLY

*Pennhurst* requires the Court to examine whether the State is the real party in interest.

*Pennhurst*, 465 U.S. at 101, 104 S. Ct. Plaintiffs' position in this case is "that all inmates with

Hepatitis C should receive treatment for that disease whether or not monetary damages are

available to those inmates or not." (Doc. #48, Plaintiffs' Memo in Support of the Motion for

Class Certification at p. 2).  This clearly signifies that the real party in interest is IDOC, an

agency of the State, and not Dr. Elyea in his personal capacity.  They are challenging State

policy, not Dr. Elyea's treatment of the individual plaintiffs.

      Further, sovereign immunity applies if an adverse judgment would "expend itself onto

public treasury or domain, or interfere with the public administration" and would "restrain the

government from acting or caused it to act."  *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir.

2001) (quoting *Pennhurst*, 465 U.S. 89, 101, n.11).  In this case, it would do just that to IDOC's

health care policy.

      The issue in this case involves IDOC's HCV policy.[4]  Dr. Elyea was the Agency Medical

Director for the IDOC from July 1, 2002 to April 30, 2007.  (*Roe*, Doc. 88, p.4).  It is alleged that

Elyea was responsible for establishing and devising IDOC policies regarding medical treatment

for inmates, but Dr. Elyea has testified that he needed ultimate approval by the IDOC's Director

before these policies were adopted.  (Orr, Doc. #47, Ex. 1, Elyea Transcript, pp. 1-2).  Elyea

drafted the IDOC policy for treatment of Hepatitis C that is at issue in this case.  (Doc. #47, Ex.

---

[4]      It is not "Dr. Elyea's policy," as continually referenced by the plaintiffs (and the Court) in *Roe*.  It is an official policy of IDOC, an agency of the State of Illinois.

#1, pp. 1-9).  Dr. Elyea based the policy on the 2003 and 2005 Federal Bureau of Prisons Criminal Practice Guidelines for the Prevention and Treatment of Viral Hepatitis (which have still not been entered into the record by plaintiffs).  (Doc. #47, Exhs. 1 and 2).  These federal guidelines were not binding on the IDOC, but is something Elyea chose to base the IDOC policy upon.  (Doc. #47, Ex. 2 at p.14).

This illustrates the inherent problem with attempting to hold a policy maker personally liable for policy formulation.  Under this scenario, the only limit to Dr. Elyea's personal liability is the statute of limitation.  It is axiomatic that the State cannot act on its own and necessarily acts through its employees and officers.

The part of the policy primarily at issue in this case regards an inmate's required length of remaining sentence in order to obtain HCV testing (a liver biopsy) and be considered for and receive anti-viral treatment. Dr. Elyea testified in *Roe* that the HCV policy required inmates with Hepatitis C to have at least 18 months left to serve in the IDOC before they receive any treatment or testing.[5]  He testified that he arrived at the 18 month figure by allowing 6 months for work-up (during which time inmates had to have at least two elevated enzyme levels and lab tests) and one year for the anti-viral treatment.  (Doc. #47, Ex. 1, pp. 43-52).   If an inmate had less than 18 months to serve, no testing or work-up was done because there was not enough time for treatment.  *Id.*

     3.       ELYEA WAS NOT INVOLVED IN TREATING PATIENTS

---

[5]     Various places in the record in *Roe* and in the pleadings have inconsistently referred to the length of time as one year, 18 months, and /or two years.

60186401v1  899622  43744

As Agency Medical Director, Dr. Elyea does not treat medical care or treatment to inmates.  (Doc. #47, Ex. 2 at p. 42).  It was up to the doctors at the individual prisons to notify Dr. Elyea if that doctor wanted an inmate to be treated for HCV.  (Doc. #47, Ex. 2, p. 17).

Not only that, the Court concluded that Dr. Elyea was personally liable for Mr. Roe's injuries despite the fact the Dr. Elyea was no longer Agency Medical Director when Roe was injured.  The Court found the policy was still in force.  (*Roe*, Doc. #88 at p. 9).

4.    THE CASES CITED BY THE COURT IN DENYING THE *ROE* DEFENDANTS POST-TRIAL MOTION ON THE ELEVENTH AMENDMENT ARE NOT ANALOGOUS AND RELY ON *DICTA* AND, HENCE, ARE NOT CONTROLLING

The *Roe* court held in its Order granting and denying post-trial motions (Doc. #88) that notwithstanding the fact that Dr. Elyea was not involved in treating any of the patients, he could be held individually liable because he was responsible for devising and implementing the HCV policy. (Doc. #88, p. 2) (citing *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) and *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985)).  With all due respect, the Court's analysis was simply wrong.

These cases are readily distinguishable from the facts herein and do not address, in any fashion, the Eleventh Amendment and sovereign immunity principles delineated by the U.S. Supreme Court in *Pennhurst, Coeur d'Aleve Tribe of Idaho*, and *Seminole Tribe* and this Court's decision in *Luder v. Endicott, supra*.

To begin with, *Armstrong* and *Duckworth* both involved situations where there was no personal liability against the governmental official.  Both cases cite hypothetical examples (*i.e., dicta*) where a supervisor *might* face personal liability for personally formulating an unconstitutional policy.  *See, Armstrong*, 152 F.3d at 581 (noting if Sheriff Squadrito or county jail administrator had personally formulated the questionable will-call policy or personally

12

formulated the policy and custom of refusing written complaints regarding the will-call list, they *might* face personal liability). In *Duckworth*, the hypothetical example cited by the Seventh Circuit was that the Director of the Illinois Department of Corrections Franzen might fact personal liabilities if he rewrote the guards' manual to eliminate some safety precaution in the event of fire. *Duckworth*, 780 F.2d at 650.

In addition to relying on *dicta*, the cases are distinguishable on other grounds. Significantly, *Duckworth's* hypothetical involved the Director of the Illinois Department of Corrections.[6] Technically, Dr. Elyea cannot, on his own, make policy for the Illinois Department of Corrections. Any policy which involves input (such as this one) must be approved by the Director of Illinois Department of Corrections. (Doc. #47, Ex. 1 at pp. 1-2). Thus, notwithstanding the questionable validity of the examples cited by *Franzen,* Dr. Elyea is one step removed and is not the ultimate policymaker for the IDOC. Even if he is, it does not change the applicable sovereign immunity analysis.

Moreover, *Armstrong's* example involved a county sheriff and the county jail administrator personally formulating an unconstitutional policy. *Anderson*, 152 F.2d at 581. Because it was a municipal case, the Eleventh Amendment is inapplicable. *Mt. Healthy,* 429 U.S. at 280, 97 S. Ct. at 572. It is also distinguishable because the hypothetical involved the county sheriff making policy for the jail. In Illinois, sheriffs are the final policymakers for the jail. *See, DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 975-9976 (7th Cir. 2000). Whereas, Dr. Elyea was not the final policymaker for the IDOC with respect to medical policies for the reasons stated above.

---

[6]     Defendants asks that the Court take judicial notice of this fact from the *Roe* case.

60186401v1 899622 43744

It is significant indeed that the Seventh Circuit chose to cite *dicta*, as opposed to actual cases, for the proposition that it is conceivable that a state or local employee could be held individually liable for their role in policymaking decisions.[7]   Neither the Attorney General's Office (counsel for Dr. Elyea in *Roe*) nor the undersigned have been able to locate any published decisions holding a state employee liable under §1983 for a policy of the State.

>    5.    THE RELIEF SOUGHT HEREIN WOULD CONTROL THE ACTIONS OF THE STATE

This case is analogous to *Pennhurst* where, sovereign immunity barred plaintiffs' claims against various state and county officials for damages and injunctive relief, *i.e.*, "which in effect was that a major state institution be closed and smaller state institutions be created and expansively funded." *Pennhurst*, at 465 U.S. at 107.

Here, plaintiffs are basically seeking this Court to require IDOC to overhaul its medical treatment protocol for HCV treatment.  This will undoubtedly require a substantial expenditure by the State and will, without question, control the actions of the State by telling it how to meet its constitutional and statutory obligations to provide inmate health care.   This relief is barred by sovereign immunity.

>    B.    THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT APPLY HERE, AND SHOULD NOT BE APPLIED IN ANY EVENT AGAINST STATE GOVERNMENTAL ENTITIES.  THEREFORE, COMMONALITY AND TYPICALITY ARE LACKING.

Non-mutual offensive collateral estoppel occurs where a plaintiff who is not a party to the prior proceedings seeks to prevent a defendant from re-litigating an issue previously decided against the defendant.  *Parklane Hosiery*, 439 U.S. 322, 326, n. 4.

---

[7]    "*Dicta* are parts of an opinion that are not binding on a subsequent court, whether as a matter of state decision or as a matter of law of the case. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).

60186401v1  899622  43744

The U.S. Supreme Court has held that non-mutual issue preclusion is generally not available against the federal government.  *U.S. v. Mendoza*, 464 U.S. 154, 158, 104 S. Ct. 568 (1984).  Although *Mendoza* has not been definitively expended to apply to state governments, there is support for that proposition.  *Chambers v. Ohio Department of Human Services*, 145 F.3d 793, 801 (6th Cir. 1998, n. 14) (citing *Hercules Carriers, Inv. v. Florida*, 768 F.2d 1558, 1579 (11th Cir. 1985); *Milton S. Kronheim & Company v. District of Columbia*, 91 F.3d 193, 205 (D.C. Cir. 1996)).  The Northern District of Illinois (*see Petit v. City of Chicago*, 2001 WL 914457 at *6 (ND-IL 2001)) acknowledged that *Mendoza's* rationale may apply to suits against a state government *but see, State v. United Cook Inlet Drift Ass'n.,* 868 P.2d 913 (Alaska 1994), *on reh'g.,* 895 P.2d 1947 (Alaska 1995).

Generally, non-mutual offensive collateral estoppel is examined in the context of the following factors:  (a) whether its application would create an incentive for potential plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment," since plaintiffs "will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins; (b) if the offensive use of collateral estoppel is "unfair to a defendant," to the extent that: (1) the defendant may have been sued in the first action for a "small or nominal damages" for which "he may have [had] little incentive to defend vigorously; (2) the "judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor the defendant;" or (3) the "second action affords the defendant procedural opportunities [*e.g.*, discovery procedures] unavailable in the first action that could readily cause a different result."  *Parklane Hosiery Company v. Shore*, 439 U.S. 322, 330-331 (1979).  Other reasons for denying the use of non-mutual offensive collateral estoppel include its application to legal questions where it forecloses the opportunity to

60186401v1 899622 43744

develop the law, "particularly where it involves legal questions of general interest that have not been resolved by the highest appellate court." *Petit,* 2001 WL at 914457 at *6 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 at 99 S. Ct. 645 (1979)).  Whether it is fair to apply non-mutual offensive collateral estoppel is to be determined on a case-by-case basis with deference to the practical realities faced by the parties.  *Id.* (other citations omitted).

The undersigned has been unable to find any Seventh Circuit or State of Illinois case addressing whether the Seventh Circuit or State of Illinois has adopted the *Mendoza* rationale as to the State of Illinois.  Defendants urge the Court to do so as the same principles outlined in *Mendoza* with respect to the federal government apply to States.  Regardless of whether it applies, it would be unfair to apply it in this case because the issues sought to be precluded are not the same as that involved in the prior action, *i.e.*, *Roe*.

Although it is not entirely clear what exactly the plaintiff is trying to estop the defendants from arguing, it appears that they are arguing that based upon the jury verdict in *Roe*, defendants are collaterally estopped from denying that plaintiffs have an objective serious medical condition and that the statewide policy was, on its face, deliberately indifferent to all persons with HCV.  If this is plaintiffs' position, it is grossly incorrect. (*See, e.g., Roe* Doc. #50, p. 2).  The only issue determined in *Roe* was that, "as to Roe's 2004 incarceration, there was sufficient evidence for the jury to rationally conclude that Dr. Elyea's two-year policy was deliberately indifferent to Roe's serious medical needs." (*Roe,* Doc. #88, pp. 9-10).  In other words, the jury made a very specific – or as-applied – finding regarding application of the policy to one defendant: Roe.  The jury did not conclude that the policy as a whole (or on its face) was deliberately indifferent to *all* HCV patients' serious medical needs.

16

Finally, it would be disingenuous to attempt to argue that – given the different HCV standards now apparently being suggested by plaintiffs – the same issues are being litigated in *Orr*. Thus, plaintiffs fail to satisfy prongs (1) and (2) of the *prima facie* case for collateral estoppel. *Adair*, 230 F.3d at 893. Obviously, since a new standard is being proposed, plaintiffs cannot show that prong (3) has been satisfied either because the issue of what standard *should apply* was never determined in the first instance in *Roe*.

### C.   THE PLAINTIFFS HAVE NOT ESTABLISHED THE PREREQUISITES FOR MAINTAINING A CLASS ACTION UNDER RULE 23.

In exercising its discretion to certify class, the Court does not presume that all well-pleaded allegations in the Complaint are true and can look "beneath the surface of the Complaint" to conduct its Rule 23 inquiries. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). "The propriety of class action should not turn on [the] likelihood of success on the merits." *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). "Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo*, 249 F.3d 676. Defendants urge this Court to do so. The record has simply not been developed in sufficient detail to certify a class. Thus, the class should be denied.

Defendants incorporate by reference the Court's analysis above in *Roe* denying an identical motion for class certification.

#### 1.   COMMONALITY

Plaintiffs cannot meet commonality because there is not a common nucleus of operative facts. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Plaintiffs' claim that "there is a common issue of law as to what standard the Department must meet in giving care and treatment to their inmates," and "that issue will be identical amongst the individuals the various sub-classes

17

– at least and more likely the class as an entirety."  (Doc. 47 at p. 5).  Plaintiffs also argue that the policy is common in that care is denied to all Hepatitis C patients within one year of their discharge date.  *Id.*, p. 6.  These factors do not establish commonality.

By necessity, in every Eighth Amendment case, a court is going to have to determine whether the case meets constitutional standards, not necessarily the care to which individuals are entitled.  That is precisely the problem.  The care to which  the individuals may or may not be entitled varies widely.  Therefore, plaintiffs simply frame the issue too broadly.  All plaintiffs appear to challenge the policy regarding treatment of Hepatitis C, but it is clear from the Court's post-trial order in *Roe* that the policy does not affect all inmates with Hepatitis C because not all of the plaintiffs will have less than one year remaining in their sentence and others are not candidates for Hepatitis C treatment.  As discussed by the Court, there are a host of other factors to consider such as whether there was a gap in a plaintiff's incarceration dates.

2.   TYPICALITY

Plaintiffs must prove that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory.  *Arreola,* 546 F.3d at 798.

Earlier this year, the Northern District of Illinois considered an inmate class certification issue in a very similar set of circumstances. *Wrightsell v. Sheriff of Cook County*, 2009 WL 482370 (N.D. Ill. 2009).  *Wrightsell*, an inmate in the Cook County Jail, alleged that the defendants adopted a policy of providing dental care only in cases of extreme emergency and, in 2007, eliminated the positions of many of the dentists employed at the jail, leaving only one dentist responsible for the care of 10,000 people.  The plaintiff alleged that conduct constituted deliberate indifference to the dental needs of prisoners. *Wrightsell*, 2009 WL 482370 at *1.  He

18

sought an order to certify a class under Rule 23(b)(3) of "all persons who, while confined at the Cook County Jail on or after September 23, 2006, made a request for treatment of dental pain and were not examined by a dentist within seven days of the request." *Id.*

*Wrightsell* addressed an identical unsuccessful class action for the same issue and noted that commonality and typicality were lacking because an Eighth Amendment claim requires resolution of both an objective and subjective element for each prisoner, *i.e.*, that he has an objectively serious medical need that results in significant harm or injury by inattention and that the inattention was a result of a sufficiently culpable state of mind so as to constitute deliberate indifference, a subjective inquiry.  *Wrightsell* at *2 (citing *Smith,* 2008 WL 1995059, at *1) (citing *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006)).

Each prisoner would have to show "that he had a condition that required dental care; that he did not receive adequate dental care; . . . that he suffered significant injury or harm; and . . . that the injury or harm was causally related to the inadequate care."  *Id.; Accord, Babcock v. White*, 102 F.3d 267, 271; *Carey v. Piphus*, 434 U.S. 247, 255 (1978); *Henderson v. Sheahan*, 196 F.3d 839, 849 (7th Cir. 1999).

Plaintiffs also suffer the same problems presented in *Henderson* because a plaintiff may not recover monetary compensation for a currently unmanifested injury unless the future serious injury is reasonably certain to occur.  *Henderson*, 196 F.3d at 848-849.

While all the plaintiffs' claims are ostensibly based on deliberate indifference to serious medical needs, as pointed out in *Wrightsell*, none of the claims are typical.  Every plaintiff's individual circumstances are going to be different in terms of their particular genotype, length of sentence, whether they are candidates for treatment in the first place, whether they were offered

19

treatment, whether they refused treatment, and whether there was a gap in incarceration. Therefore, the claims are not typical.

     3.    <u>ADEQUACY</u>

Under Fed. R. Civ. P. 23(4), "adequacy of representation is comprised of two parts: the adequacy of the named plaintiff's counsel and the adequacy of representation provided in protecting the different, separate and distinct interests of the class members." *Retired Chicago Police Association,* 7 F.3d 584, 598 (7th Cir. 1993) (other citations omitted). A class will not be fairly and adequately represented if the class members have antagonistic or conflicting claims. *Id.*

In this case, no specific class representatives have been named. For that reason alone, class certification should be denied.

Moreover, no affidavits or other evidence has been provided by plaintiffs which would demonstrate that *any* of the named plaintiffs fit into the class or subclasses set forth in plaintiffs' Motion for Class Certification for certification. For example, it is unknown which of the plaintiffs were affected by the policy, their treatment regimen and the nature of their alleged HCV. As *Szabo* makes clear, the Court is not required to rest on the naked allegations in the complaint in ruling upon class certification.

It also appears that some of the plaintiffs may be antagonistic to the interests of the class as evidenced by inmate Jones' complaint against his attorney (Doc. #37), as well as his subsequent inquiry to the Court (Doc. #53, to which defendants are not privy). Therefore, it appears that at least inmate Jones is antagonistic to the interests of the class.

Finally, at least 56 of the 165 plaintiffs and intervenors have been discharged from their sentence or paroled. (*See* Ex. 1, Aff. of Terri Anderson, ¶7). The bottom line is that one-third of the plaintiffs are no longer incarcerated. This has a dramatic impact on whether they can

60186401v1 899622 43744

adequately represent the class.  It is especially difficult to conceive how they could adequately represent the Rule 23(b)(2) class seeking injunctive relief as their release from incarceration renders such  claims moot.  *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (citations omitted).

4.      QUESTIONS OF LAW OR FACT, AND THE CLASS MEMBERS DO NOT PREDOMINATE OVER QUESTIONS AFFECTING ONLY INDIVIDUAL MEMBERS, AND A CLASS ACTION IS NOT SUPERIOR TO OTHER AVAILABLE METHODS FOR FAIRLY AND EFFICIENTLY ADJUDICATING THE CONTROVERSY.

It is undisputed from Dr. Elyea's previous testimony that 85% of HCV patients are asymptomatic and never go on to develop cirrhosis or cancer.  (Doc. #47, Ex. 2, at pp. 4-5).  This underscores the inherent problem that the issues of individual causation and injury predominate, and not any common issues.

As aptly observed in *Wrightsell*, the deliberate indifference standard "requires a case-by-case analysis and factual determination as to the degree of seriousness" of the impairment versus the time within which treatment was provided.  *Wrightsell*, 2009 WL 482370 at *3.  The proposed time period for treating certain classes of inmates with HCV (such as genotype 2 and 3) within 18 months could be inconsistent in some cases with the constitutional requirement, but in other cases, it would not violate the constitutional requirement because the patient may not be a candidate for the treatment.   Other genotypes, including the most common (Genotype #1) requires 48 months of treatment.  (Doc. #47, Ex. 1 at pp. 7-8).

Finally, *Wrightsell* addressed *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008), and correctly observed that *Arreola* did not hold that a District Court must certify a Rule 23(b)(3) class under the circumstances present there (and present here in *Orr*).  *Arreola* narrowly held that "the need for individual damages determinations does not, in and of itself, require denial of [a]

21

motion for certification."   *Wrightsell*, 2009 WL 482370 at *4 (quoting *Arreola* 546 F.3d at 801).

In other words, *Arreola* was focused upon individual damages determinations.  Whereas here,

the issues of individual causation and injury will predominate, notwithstanding the arguably

common issue of the challenge to the HCV policy.

For the plaintiff to argue otherwise stretches the finding of the jury beyond any

reasonable interpretation.  Specifically, the issues in the jury instructions.  (*Roe*, Doc. #46, p. 3

frame the issue as follows:

> Specifically, the plaintiffs claim that the defendant was
> deliberately indifferent to their serious medical needs by failing to
> treat their Hepatitis C.  Plaintiffs further allege in their complaint
> that the IDOC's treatment policy for inmates with Hepatitis C, as
> implemented by the defendant as the IDOC medical director, was
> deliberately indifferent to the plaintiffs' serious medical needs
> because it fails to follow federal guidelines for the treatment of the
> condition, refuses to timely administer needed liver biopsies and
> other tests, and   refuse to allow the administration if proven,
> effective medication.

A further reading of this Court's order granting and denying the post-trial motions (*Roe*

Doc. 88) clearly indicates that there was no finding that the policy, as a whole and as applied to

every inmate who may have Hepatitis C in the Department of Corrections, was deliberately

indifferent.  It would be impossible for the Court or any jury to make that determination because,

as stated above, a finding of deliberate indifference is, by necessity, a case-by-case

determination, and without knowing all the facts, it would be entirely speculative to conclude

that the policy, on its face, is unconstitutional.

Moreover, the issues instruction makes clear, as does the *Roe* Court's post-trial order, that

the basis for the claim of deliberate indifference was the defendants' failure to follow federal

guidelines. Now, plaintiff is seeking the Court to implement an entirely different guideline: the

National Digestive Disease Information Clearinghouse guidelines (attached as Exhibit A to

Plaintiffs' Motion for Injunctive Relief Doc. #49). These guidelines were not even an issue and were not in evidence in the *Roe* case. In other words, plaintiffs are seeking to apply *a different standard* in this case than in the *Roe* matter.

5.   UNDERLINE_PLAINTIFFS HAVE FAILED TO COMPLY WITH THIS COURT'S OPINION DATED FEBRUARY 25, 2009

The defendant's Motion to Strike Plaintiff's Motion for Class Determination (Doc. #25) was granted, in part, because the plaintiffs failed to attach the 2003 and 2005 Bureau of Prison Guidelines and made extensive use of those guidelines with no citation to any pages of the guidelines or Dr. Elyea's transcripts. Plaintiffs' current motion and memorandum in support of Class Determination (Docs. #47 and 48) still do not comply with the Court's explicit Order requiring the plaintiffs to include as attachments the documents they cite in their Motion and the proper citations to pages in those documents. Namely, plaintiffs do not attach either the 2003 and 2005 Bureau of Prison Guidelines and do not provide citations to any of Dr. Elyea's testimony, although they have finally provided the transcripts. Therefore, the plaintiffs' Motion and Memorandum still fail to comply with CD-IL LR 7.1(B)(1) and they should be stricken.

However, because the defendants want the record to be complete, they are attaching the 2003 and 2005 Guidelines hereto as Exhibits 2 and 3.

## V.   CONCLUSION

WHEREFORE, for the reasons stated above, defendants pray that the plaintiffs' motion be denied.

Respectfully submitted,

June 22, 2009

/s/ Andrew M. Ramge
Hinshaw & Culbertson LLP
400 South 9th St. Suite 200
Springfield, IL 62701
Telephone: 217-528-7375
aramage@hinshawlaw.com

23

60186401v1 899622 43744

Attorney Bar No. 6256554
Attorney for Defendant Elyea


<u>/s/James A. Borland</u>
Quinn, Johnston, Henderson,
Pretorius & Cerulo
600 S. 6th Street
Springfield, IL 62701
Telephone:  217-752-1133
Email: jborland@qjhpc.com
Attorney Bar No. 6206595
Attorney for Defendant Puisis

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2009, I electronically filed DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A CLASS DETERMINATION with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

| | |
|---|---|
| **H Kent Heller** | Email: kent@hhlawoff.com |
| **James A Borland** | Email: jborland@qjhpc.com |
| **Theresa M Powell** | Email: tpowell@heylroyster.com |

and I hereby certify that on _____, I mailed by United States Postal Service, the document(s) to the following non-registered participants:

> s/Andrew M. Ramage
> Hinshaw & Culbertson LLP
> 400 S. 9th St., Suite 200
> Springfield, IL 62701
> Phone: 217-528-7375
> Fax: 217-528-0075
> E-mail: aramage@hinshawlaw.com
> Attorney Bar No. 6256554
> Attorney for Defendant Elyea
>
> s/James A. Borland
> Quinn, Johnston, Henderson,
> Pretorius & Cerulo
> 600 S. 6th Street
> Springfield, IL 62701
> Telephone:  217-752-1133
> Email: jborland@qjhpc.com
> Attorney Bar No. 6206595
> Attorney for Defendant Puisis

25