UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JEFFREY ORR, et al., )
)
Plaintiff, )
) Case No. 08-cv-2232
WILLARD O. ELYEA, et al., )
)
Defendants. )

### ORDER

In this case and the cases consolidated with this case, under 42 U.S.C. § 1983, the plaintiffs, who are prisoners in the Illinois Department of Corrections ("IDOC"), complain that the defendants, who are persons acting under color of state law and employees of the IDOC and Wexford Health Sources, Inc. ("Wexford), the outsourced medical service provider of the IDOC, are deliberately indifferent to the plaintiffs' serious medical condition: specifically, Hepatitis C.

In the 11-year evolution of this case, there have been extraordinary developments. In the beginning, the disease had virtually no cure without significant risk and now has multiple cures with little risk, was almost prohibitively expensive and is now within costs that can be met. Against that backdrop, the court

grants class certification and grants a limited preliminary injunction directing the IDOC to follow their January 2019 protocols with some modifications.

## Class Certification

The court previously denied class certification for the reason that "defining the class as all inmates with Hepatitis C who have been denied treatment is too broad." (10/7/16 Order, d/e 362.) The advances in treatment warrant reconsideration of that conclusion. The plaintiffs' position is that any inmate with Hepatitis C with at least six months of incarceration remaining should be treated, regardless of fibrosis level. That satisfies the commonality and typicality requirements for purposes of class certification as to injunctive relief, as other courts have also found. *See, e.g., Postawko v. Missouri Dept. of Corrections*, 910 F.3d 1030 (2018)(affirming certification of "[a]ll those individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with chronic HCV, as that term is defined medically, but who are not provided treatment with direct acting antiviral drugs."). Joinder of all IDOC inmates with Hepatitis C, believed to exceed 2,000, is impractical and there is one common question of law or

fact—whether every inmate with Hepatitis C in the IDOC should be treated. Damages will be an individual inquiry, but that does not preclude certifying a class for injunctive relief. Separate actions will risk creating contradictory standards for the defendants. Lastly, the IDOC is refusing to act as to the class the plaintiffs seek to certify. Therefore, all the requirements for class certification regarding injunctive relief are met. Fed. R. Civ. P. 23(a) and 23(b)(1) & (2).

Plaintiffs' counsel, Attorney Kent Heller, has and will continue to fairly and adequately represent the interests of IDOC inmates with Hepatitis C. Fed. R. Civ. P. 23(g)(1) & (4). Mr. Heller has been immersed in this case for 11 years and also won a significant verdict in Roe v. Elyea, 631 F.3d 843 (7th Cir. 2011), a case regarding Hepatitis C treatment in the IDOC. Mr. Heller has procured his own well-qualified experts (as have the defendants), and Mr. Heller's advocacy demonstrates an in-depth knowledge of the latest on Hepatitis C treatment. He has been able to marshal the necessary resources to persuasively advocate for treatment for all inmates with Hepatitis C; and, he is already the counsel on all the cases that have been consolidated with this case.

## Preliminary Injunction

Several evidentiary hearings have been held in this case regarding preliminary injunctive relief. In April 2017, the court summarized the evidence presented to that point. The court assumes familiarity with that order and will not repeat the summary here. The court stated in that order that inmates should be tested for Hepatitis C upon admission to the IDOC and that inmates who test positively should be tested immediately to determine fibrosis level. The court further found that inmates who test positively and have at least one year to serve on their sentence from admission to release date should be offered treatment with direct-acting antiviral drugs as soon as possible after diagnosis, and, in any event, no later than testing at a fibrosis level of two. (d/e 433.) The court then identified more information it needed, and the parties continued extensive mediation attempts with Richard Gray, Esq., of Chicago, Illinois, as mediator. Mr. Gray now reports to the court that those attempts at mediation have failed.

A final evidentiary hearing regarding preliminary injunctive relief was held on January 22, 2019. The experts testifying in that hearing offered no surprises: they testified that there was no

medical reason to delay treating individuals with Hepatitis C and that beginning treatment earlier is better than waiting. The treatment now costs about $17,000. The court also learned that the IDOC had implemented a new policy in January 2019 essentially making treatment available to inmates with a fibroscan score equal or greater than two and an APRI score equal or greater than .7. (IDOC Jan. 2019 Protocols attached as Exhibit 1, p. 2.)

To begin with, certain simplistic observations are appropriate. The IDOC and Wexford, through persons acting under color of state law, are responsible for the medical care of the prisoners. The constitutional protection of the Eighth Amendment states that plaintiffs should not be subjected to cruel and unusual punishment. The Supreme Court recognizes that deliberate indifference to a serious medical condition is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

For the plaintiffs to obtain a preliminary injunction, they must show that they have some likelihood of success on the merits, that they will suffer irreparable harm if a preliminary injunction is not granted, and that their legal remedies without the injunction are

inadequate. *Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017). Some likelihood of success means "'better than negligible.'" *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018)(quoted cite omitted). If these hurdles are cleared, the Court then balances the harms of granting or denying the preliminary injunction and considers whether the injunction is in the public interest. Id.

The plaintiffs object to the protocols adopted by the IDOC because the protocols do not provide for antiviral treatment of Hepatitis C for inmates with fibrosis levels of zero or one. The plaintiffs are not satisfied with the new protocol and still move for a preliminary injunction commanding the defendants to treat all inmates with Hepatitis C with six months to serve regardless of the fibroscan or APRI score.

The plaintiffs do not have a better than negligible chance of succeeding on this claim because they do not have evidence that refusing to treat everyone regardless of stage or symptoms amounts to deliberate indifference. The medical experts agree that treating everyone would be the best practice, but the Court's inquiry is limited to whether the current protocol is deliberately indifferent, not to whether it is the best treatment. *See Holloway v. Del. Cnty.*

*Sheriff*, 700 F.3d 1063, 1073 (7th Cir.2012) ("[A] prisoner is not entitled to receive unqualified access to healthcare."); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997) (Eighth Amendment entitles inmates to reasonable measures to meet a substantial risk of serious harm, not the best care possible). Cost can be a legitimate factor in prioritizing prison medical care. *Ralston v. McGovern*, 167 F.3d 1160 (7th Cir. 1999)("the civilized minimum [for medical treatment of prisoners] is a function both of objective need and of cost"); *Jordan v. Milwaukee County*, 680 Fed.Appx. 479, 483 (7th Cir. 2017)(not published in Fed.Rptr.)("cost of care can be a permissible factor in choosing between acceptable treatments.")

Deliberate indifference is the knowing disregard of a substantial risk of serious harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiffs have not demonstrated any likelihood that persons with Hepatitis C with a fibrosis level less than two are at a substantial risk of serious harm. The IDOC defendants have relied on experts at the University of Illinois-Chicago to develop this protocol, and those experts opined in 2016 that even waiting until fibrosis level three (the prior protocol) did not put the typical patient at a substantial risk of harm absent

some medical indication for earlier intervention. The UIC experts agree that, while treating everyone is the ideal goal, prioritizing based on fibrosis level is a reasonable approach when funds are limited. There is nothing in the January 2019 protocol which indicates a deliberate intention to ignore the effects of the disease or to deliberately harm the prisoners or consciously expose them to a serious risk of harm.

However, the plaintiffs have demonstrated a more than negligible chance that refusing treatment for inmates with a fibrosis level of at least two could amount to deliberate indifference. The court finds that commencing treatment when a prisoner reaches fibrosis level two is based on the medical certainty that the disease is beginning to advance. Additionally, the fibrosis test can be a rough indicator—a level two may actually be a level three. Combine this uncertainty with the inevitable prison delays means that waiting until level three could well create a substantial risk to inmates of liver damage, liver cancer, and painful extrahepatic conditions. Those risks are enough to meet the irreparable harm/inadequate legal remedies requirements for a preliminary injunction.

The balance of harms weighs in favor of granting a preliminary injunction that adopts, with some reasonable modifications, the January 2019 protocol. The IDOC is already following that protocol, so the additional burdens imposed by this order on IDOC and Wexford should be modest, particularly compared to the health risks faced by the untreated inmates with progressing Hepatitis C. This approach also ensures that the injunctive relief is narrowly drawn, extend[s] no further than necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2)(listing findings necessary to warrant preliminary injunction in prison setting).

As to the interest of non-parties, the court sees no detrimental effect on the public interest by issuing this preliminary injunction. The public has an interest in ensuring that inmates' health is maintained and in reducing the prevalence of Hepatitis C in the prison as well as the community. Similarly, the court sees no burden on public safety or the operation of criminal justice system, nor any intrusion on the principles of comity. 18 U.S.C. § 3626(a)(2).

The January 2019 IDOC protocol already refers to UIC inmates with a fibroscan of two or greater, but that does not moot the need for a preliminary injunction. Without an injunctive order, the IDOC may abandon the current protocol. The court finds a "'cognizable danger of recurrent violation, something more than the mere possibility.'" *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009).

Further, the January 2019 IDOC protocol does not actually mandate treatment. Instead, inmates with level two or greater are referred to UIC for "possible HCV therapy." This needs to be revised to state that inmates with a fibroscan level greater than two and an APRI greater than .7 will be referred to UIC for HCV therapy unless UIC determines that treatment is contraindicated. Additionally, there is no deadline for determining when HCV therapy starts. That is too open-ended. Based on all the evidence, the court determines that the fibrosis level/APRI score reasonably can and should be determined within three months of incarceration and that HCV therapy should be started within three months of a determination that the fibrosis level is at least two and the APRI is at least .7. That means that an inmate with a fibrosis level of two upon his

entry to the IDOC with at least one year to serve will receive treatment within six months.

The plaintiffs object that some of the contraindications for treatment in the protocol are without medical basis. Some latitude has to be allowed the IDOC and Wexford in deciding whether to treat when a serious mental health or medical condition is present. While failing to treat Hepatitis C once Fibrosis Level two is reached, the court finds, could be deliberate indifference to a serious medical condition, the same is not true in cases of mental health issues or other existing medical conditions, in light of the difficulties involved in an institution the size and scope of the IDOC.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiffs' second motion for class certification is granted in part and denied in part [398].** Pursuant to Fed. R. Civ. P. 23(b)(2), the Court certifies two classes for injunctive relief:

Class 1: All current and future prisoners in IDOC custody who have been, or will be, diagnosed with chronic hepatitis C virus, have at least six months or more remaining on their on their sentence, and who have not previously received treatment which resulted in a sustained viral response.

Class 2: All current and future prisoners in the IDOC custody who have been, or will be, diagnosed with chronic hepatitis C virus, have at least one year remaining on their sentence, have a fibrosis level of greater than or equal to two and an APRI score greater than or equal to .7, and have not received direct-acting antiviral drugs.

Attorney Kent Heller is appointed class counsel.

**IT IS FURTHER ORDERED AND ADJUDGED THAT the plaintiff's preliminary injunction [449] is GRANTED in part and denied in part.** Preliminary injunctive relief is granted to certified class 2. The defendants are ordered to commence immediately the treatment of the class 2 plaintiffs' Hepatitis C in accordance with the new protocols adopted by the IDOC in January 2019, attached to this Order as Appendix 1, with the following revisions: (1) inmates with a fibroscan greater than two and an APRI greater than .7 will be referred to UIC and will receive HCV therapy unless UIC determines that treatment is contraindicated; (2) fibroscan and APRI levels will be determined within three months of admission to the IDOC; (3) HCV therapy will be started within three months of a determination that the fibrosis level is at least two and the APRI is at least .7.

This preliminary injunction is entered against and shall be served upon the Director of the IDOC in his or her official capacity and the Medical Director of the IDOC in his or her official capacity. Defense counsel for the Illinois IDOC shall ensure that said individuals receive a copy of this order. This preliminary injunction is binding on the persons described in Fed. R. Civ. P. 65(d)(2).

A status conference by telephone is set for Friday, February 22, 2019, at 10:30 a.m. to discuss notice to the certified classes and the procedure and time line for identifying the inmates in class two.

Pursuant to 18 U.S.C. Section 3626(a)(2), this preliminary injunction expires 90 days from the entry of this order. A further status conference by telephone is scheduled for May 1, 2019 at 10:00 a.m. to discuss the need for the entry of a successive preliminary injunction.

**Entered: February 4, 2019**

                                                  _s/Harold A. Baker_
                                                  **HAROLD A. BAKER**
                                                  **U.S. DISTRICT JUDGE**